We can change to another lawyer. Good morning. Good morning, Your Honors. My name is Lynn Hartfield, and I represent the appellant Jerome Isham. The clock does not seem to be running, but there we go. For 14 and a half months, my client was represented by a lawyer who had, for two months, represented the head of the organization for which he was being indicted as a member. The government knew of the connection between Mr. Isham and Mr. Willard right out of the gate. It admitted that it told Mr. Isham's lawyer, Mr. Black, that the two cases, it believed the two happened with his case, other than the government obtaining more evidence against him and then eventually bringing him into a larger conspiracy and facing significantly more exposure. Now, why did this happen? Well, the government provided the district court with hundreds of pages of affidavits, but it didn't answer the essential question, which is, why did this happen? These were experienced prosecutors. They knew the rules about motions to disqualify in the past, and yet nobody told the district court. Nobody ensured that Mr. Isham knew that his lawyer was conflicted. Nobody got a written waiver from him. Do you have to show prejudice? So the issue with how this was framed is that — But do you have to show prejudice? Yes. Yes. And in this instance, the issue is that there was no evidentiary hearing, so we don't know what the prejudice to Mr. Isham. The difficulty is that the district court applied the wrong standard. The district court said, well, he got new counsel before trial, so therefore no harm, no foul. But that's not the standard, because people are entitled to conflict-free counsel at the plea negotiation stage, and that's the critical time when Mr. Isham had conflicted counsel. Earlier proceedings were dismissed, correct? They were, but it's essentially the same case. My question is, yes. Yes. Right? Did the earlier proceedings come up in any way in the trial? He was charged with the same offenses in the conspiracy case, so I'm not sure what you mean by the early proceedings. Any reference in the trial, in the transcript, to what occurred under prior counsel? I'm not understanding your question. Is that the answer, no? I'm not understanding your question, because the issue is that Mr. Black represented him — Isham had counsel that you contend was conflicted, and that that conflict should have been brought to the attention of the court Yes. And my question is, did anything about the prior representation come up in this trial? The issue with the prior representation has to do with plea negotiations, so no, it didn't come up in the trial. Okay, but so is your argument that there was something that would have happened during Black's We have to show that there is an actual conflict, that there would be an alternative strategy that could have been pursued that was inherently in conflict with Mr. Black's duties. Now, Mr. Black had a duty to Mr. Woolard that continued after he got off the case. But you seem to be saying that your client would have pled guilty if he had had unconflicted counsel. That's true. And I don't see that as being anything other than speculative. Well, that's why we need an evidentiary hearing, and that's why I'm asking for the court to remand for an evidentiary hearing. But what is the basis? What evidentiary basis would we be starting from? Because I have the same concern, Judge Callahan, is somebody could theoretically argue there's prejudice here because they might have wanted to plea guilty, but the record doesn't otherwise suggest that your client was thinking of a guilty plea during that time period. There hasn't been And that any lawyer worth his salt would have encouraged Mr. A to plead guilty and B to cooperate. And by the time he got Mr. Martin as his attorney, that opportunity had evaporated. And so the question here is... Were you saying that ship had sailed because the first to squeal gets the deal? Yes. And he didn't get his shot at testifying against the other defendants that testified against him at trial? I think the record strongly suggests that that would have been the case. But because we don't have an evidentiary hearing and those issues weren't explored, we can't tell. But, you know, what we have is 14 and a half months that he was sitting there, nothing happens on his case. We know his lawyer was conflicted. We know Mr. Black could ethically not have encouraged Mr. Isham to cooperate in this case because he would have been violating... Is there an affidavit from conflicted counsel that says, but for my conflict, I would have encouraged him to plead guilty or that he wanted to plead guilty or... Mr. Black didn't appear to think he had a conflict. But that's why we need an affidavit. And what offers were extended to you? What did you tell Mr. Isham? What did you advise him? Those are the kinds of questions that were missing from this record. And the district court applied the wrong standard and said, hey, he got new counsel for trial, so there's no problem. Okay. You also... Since you don't have a lot of time, do you want to talk about the unvaccinated juror issue? You know, I concede that the weight of authority is against me on the unvaccinated juror issue. I would, however, ask the court to look at this jury selection because the JSSA and our jurisprudence says jury duty is both a right and a wrong. There's the fact that people who are unvaccinated were treated as unwanted. Is there any authority for persons unvaccinated against COVID-19 as a distinct group? Do we have any authority? No, we don't. And I will concede that the weight of authority is against that. And your co-defendants talked about it down below, but they haven't raised it here, right? Right. Your clients, the one that has. You know, personally, I think that's an issue that requires more scrutiny, but I will acknowledge that the weight of authority from other circuits is against me on that. I think the problem with this jury selection is that the judge here acted like a jury commissioner and excused people categorically. It was kind of strange that they put two people in that had been excused, or I don't know, that they kind of had like a comedy of errors going on. Yes, it was a very rapid jury selection, and the problem is that the judge categorically excluded people and acted like a jury commissioner, but really didn't inquire about the things that the JSSA says you need to inquire about. If everybody who gets called for jury duty can just simply say, you know, gee, I don't like fentanyl, or I don't like firearms, or this trial seems too long, and they get to go, that, you know, it thwarts the aims of the jury system. It doesn't seem like there was a whole lot of objection, though, from your client on some of these issues. Well, afterwards, my client did object to the speed with which the jury selection had occurred. Right, but that was a sort of general back-end objection. It was, it was, and, you know, I think because jury selection is an issue that affects the entire system, the integrity of the system, this court should look carefully at this jury selection. Do you want to save any time for rebuttal? I do want to save the rest of my time for rebuttal. Let me make sure none of my colleagues, does anyone have a question? Okay, we'll save the balance. Thank you. Good morning again. Good morning, Your Honors, again. So you are still Mr. Morgan? I am. Okay, for the government. With respect to the conflict issue, I think it's important to step back for a minute and to realize that we're not talking about whether or not there was a Sixth Amendment conflict of counsel claim. That's not the claim that's being raised here. What's being raised is an outrageous governmental misconduct claim. And the claim is that because the government didn't, in the defendant's view, act with sufficient dispatch to raise potential conflicts, not actual conflicts, potential conflicts that Mr. Black may or may not have had in that case, that somehow or other that justifies dismissal of this new case in which the defendant was at all times represented by conflict-free and very competent counsel. What about the argument that during Black's representation there might have been a possibility for a guilty plea? Well, what the record shows is that Mr. Enstrom was issued not one but two pretrial plea offers, which he rejected. How much were those? The record doesn't reflect the specifics, but what it does reflect is that the cap on the plea offer was no more than 10 years. Now, as charged, there was a mandatory minimum of 10 years. So what we know is that the plea offer got rid of the mandatory minimum, which meant he could have gotten anything from zero to 10, whatever the judge wanted to give him. So quite a good deal, frankly. Because what did he get? Well, he got 15, which was the mandatory minimum for what he was convicted of. But so he was given what was essentially the same plea offer with some, you know, variations around the edges that his co-defendants were offered prior to trial. It was like no mandatory minimum and take your chances with the judge. And some people took it and testified against these three defendants. Some people took it and some people didn't. And I would point out that there's actually nothing in the record to suggest that when Mr. Isham was indicted in this new case, when he was added, that the government just was unwilling to entertain any plea offers. There's simply nothing in the record that suggests that when he was charged in this case that his counsel ever pursued a plea. So this idea that he was just chomping at the bit to plead guilty is just, like, factually not supported. Christopher Black was the earlier attorney, correct? That's correct. And when Isham was charged, Black represented him? Yes. When he was initially charged in the standalone case, he was initially represented by the Federal Public Defender at arraignment. But then, yes, he retained Mr. Black about a week later. And at that time, Black also represented Woolard, right? Yes, he had been retained. It's interesting. How hard is it to say yes or no? I was just simply going to say to the fact that he— I'll give you every opportunity to do that. If I ask you a question that can be answered with a yes or no, please give me a yes or no. Yes. So the answer is yes. Yes. And at that time, he also represented what turned out to be the CI, correct? Yes. Well, actually, no. He was not actively representing him at that time. That representation had ceased in 2016. He had formerly represented Hecox, if I'm pronouncing it correctly. That is correct. What do we make of that? Of the prior representation of Mr. Hecox? Well, we know that that was a potential conflict of interest, and we also know that nobody was aware of this. Well, I can't back up. I can't speak to what Mr. Black was aware of. What I can speak to is what the government was aware of, which is that the government was not aware of the identity of the CI when the warrants were issued, and they learned the identity of the CI in March of 2019. They dug a little deeper, found out that Mr. Black represented the CI, and then in April of 2019, they brought that to Mr. Black's attention. They said, hey, you previously represented the CI. The government also said, you know, we're not calling the CI. You don't have a basis to impeach the CI vis-à-vis the warrant. So there's really no actual conflict generated at that point. Then fast forward to when Mr. Black starts requesting discovery about the CI, then the government says, wait a minute. Okay, now you're asking for discovery about the CI. Now you've got a conflict. You've got to get out, and he got out two days later. So the government acted entirely appropriately here. They brought potential conflicts, potential conflicts to Mr. Black's attention, and they were entitled to rely on Mr. Black's professional judgment that I don't have an actual conflict, and there's nothing wrong with relying on defense counsel to make that call. That's what defense – they're ethically obligated to do this, and the government's entitled to rely on that. Was there some point where that changes, where the government does have an obligation to go to the court? I think that the obligation to go to the court arises when the government has reason to believe that there's an actual conflict because the defendant's Sixth Amendment right to conflict-free counsel is only violated when there is an actual conflict. A potential conflict is not a constitutional violation. There may be prudential reasons why you may want to go to the court because you don't want to get in the middle of a trial and then have a conflict ripen and then have to start from scratch, but that doesn't mean that the government is condoning a constitutional violation in the potential conflict zone. So once there's reason to believe there's an actual conflict, then yes, the government has an obligation, and the government discharged that obligation in this case. So there was nothing outrageous about the government's conduct in dealing with this conflict that would warrant the sanction of dismissal, especially – we're not even talking about the case in which the conflict arose. That case was dismissed. We're talking about a case in which there is no allegation whatever that the defendant was burdened by an attorney who had any inkling of a conflict. So essentially – I'm sorry. Didn't mean to interrupt you. Christopher Black never appeared in the proceeding involving these three individuals. He never appeared in this proceeding, and this is the point, and I apologize, Your Honor, that I was trying to get to earlier, which is that he actually never appeared on Mr. Willard's behalf at all. In fact, there's no evidence that he ever met Mr. Willard. Mr. Willard fled to Mexico, retained Mr. Black, and then was discharged essentially the minute Mr. Black made his appearance in the Western District of Washington. So while he was technically retained, and I don't dispute that there was an attorney-client relationship, there's no indication that – there's really no reason to think that he would have gathered any information about Mr. Willard that would somehow lead to, like, a real conflict with Mr. Isham, that there was some confidence that he could exploit. The record doesn't even really suggest that. So I think that's where we stand here, is that we just – it's like there were some potential conflicts. They were brought to defense counsel's attention. Defense counsel acted as they deemed appropriate, and then when everything ripened to an actual conflict, the government stepped in and counsel got off the case. Well, you mentioned a couple of things. The record's unclear on this or unclear on that. Your friend on the other side says, yeah, that's why we needed an evidentiary hearing to kind of go through some of these, test some of this out. So how do you respond to that? Well, I think what my friend wanted was the evidentiary hearing really about the prejudice because the facts – I mean, we don't know what Mr. Black told his client. Those things we do not know. But what we do know is what was told to Mr. Black. And again, what we're talking about here is not whether there's a potential 2255 down the road for some ineffective assistance claim, although it was a case that's dismissed, so I'm not really sure how that would work, but leave that to the side. But that's not the issue. The issue isn't – the issue here is not whether Mr. Black had a conflict. The issue is whether the government is guilty of outrageous governmental misconduct in how it handled this potential conflict. And the district court said accepting everything is true. There's just nothing outrageous about what the government did, so I don't need to have a hearing to, like, flesh out whether or not there was really a conflict. And I think that was an appropriate exercise of discretion in this case. Turning quickly to the jury selection issues, I mean, these issues are just completely waived. The fact of the matter is you cannot consent to the dismissal of jurors for cause, consent, openly consent that, yes, I agree to dismiss these jurors for cause, then come into court and complain that the district judge was somehow pretextually dismissing these jurors for other reasons. You can't do that. That's not a forfeiture. That's a waiver. That should just shut down the claim immediately. And with respect to whether or not, you know, how the jury selection process was carried out, I mean, this claim is kind of morphed. I mean, as briefed, it was not a you improperly dismiss these jurors for cause. But if that is the claim, that's just not a ground for relief. This Court's cases are very clear that the erroneous excusal of a juror for cause doesn't get you any relief unless you can show that the jury that sat was somehow biased. And there's been no claim that the jury that sat in this case was biased. So there simply is no jury selection claim that can be made on this record. Unless the Court has any further questions? They don't appear to be. Thank you. Thank you, Your Honors. I just want to correct a couple of things. The court never, the district court did not ever say that it did not believe the government did not act outrageously. What the court said is that because Mr. Isham got new counsel at the trial, there was no harm, no foul. The issue here, again, is there needed to be an evidentiary hearing. And the government speculates a lot about what happened here. For example, did Mr. Black have a conversation with Mr. Woolard? Did he ever meet him? You know, we don't know that. So we don't know what Mr. Black knew from Mr. Woolard. But certainly what we have here is enough evidence to show that there was under Wells an actual conflict because there is a plausible alternative strategy that Mr. Black could have pursued, which is cooperation and plea. And that was inherently in conflict with his duties to Mr. Woolard, whether he was Mr. Black or not. That duty to Mr. Woolard carried on after he stopped representing Mr. Woolard. So there was an actual conflict. The issue here is that the district court was uninterested in finding out what happened during that 14 and a half months. And it's irrelevant that that case was dismissed because the exact same charges were brought in the Woolard case. So they're the same case, except that the Woolard case added more charges. Just in terms of what the plea offers were, in the record there are plea offers which I cited in the reply brief. They were significantly better than the 10-year maximum that is in the record with respect to Mr. Isham. So again, that calls out for some inquiry. Why was Mr. Isham not given a plea offer that was commensurate with the other defendants in the case? The issue here, again, is that the court made this decision in a vacuum, just assumed that because Mr. Isham got new counsel that everything was okay. I see I'm out of time, and I would just ask that the court remand for an evidentiary hearing on that issue. Thank you for your argument. This portion will then be submitted. Then we have the last defense.
judges: HAWKINS, CALLAHAN, BRESS